THOMPSON v. UNITED STATES FIDEL-
ITY & GUARANTY CO.

No. 7474.

Circuit Court of Appeals, Ninth Circuit.
May 14, 1936.

See, also, (D.C.) 3 F.Supp. 756.

Hawley & Worthwine, of Boise, Idaho, and John W. Graham, of Twin Falls, Idaho, for appellant.

T. L. Martin, of Boise, Idaho, for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the District Court in favor of the United States Fidelity & Guaranty Company, appellee, hereinafter called the Company, and against G. D. Thompson, as receiver of the Twin Falls National Bank, a national banking corporation, appellant, hereinafter called the Bank.

The Bank sued the Company upon a guaranty bond on the conduct of the Bank's cashier, J. E. Keefer, by which the Company agreed to reimburse the Bank for such pecuniary loss it might sustain "by reason of the fraud, or dishonesty of said Employe in connection with the duties of his office or position, amounting to embezzlement or larceny." The Company demurred, the demurrer was sustained, and judgment entered for the Company.

Failure of the Bank to comply with various provisions of the bond with respect to notice are relied upon by the Company, but it is unnecessary to consider them because, even if notice had been given, it would have been notice of facts bringing the claim within the following provision of the bond: "Second, That the Company shall not be liable, by virtue of this Bond, for any act or thing done or left undone by the Employe, in obedience to, or in pursuance of any instructions or authorization received by him from the Employer or any superior officer * * *."

The facts alleged in the complaint are that Joseph Keefer, uncle of the cashier Keefer, was the president of the Bank at all times. The further facts alleged in the Bank's complaint are stated in the Bank's brief as follows:

"* * * that Cashier Keefer honored and paid out of the bank's funds checks drawn by various corporations controlled and managed by himself and his uncle, Joseph Keefer—also President of the bank at all times. The corporations had no funds or credit in the bank and were actually insolvent, yet the checks were paid and carried as cash items to further the interests of the Keefers.

"President Keefer organized the bank and continuously controlled it—he was also the majority stockholder and controlled the check-drawing corporations—he had installed his nephew, Cashier Keefer, in office as Cashier when the bank was organized and kept him in that position until it closed. Cashier Keefer had minority stock holdings in the bank and the corporations concerned in this case. The Keefers knew the corporations were worthless, but, desiring to secure money to carry on their business, planned to get money out of the bank through Cashier Keefer's authority. The two of them carried on this scheme by having the corporations draw checks as listed in Exhibit B attached to the amended complaint. These checks bear date as early as March, 1931, and from then on to the very day of the bank's closing, November 21, 1931. They total $9,815.67. The checks were in the due course of business presented to the bank and under the Cashier's orders were paid and carried as cash items."

Here the complaint shows on its face that whatever was done in the way of the acts alleged to amount to embezzlement or larceny was done "by the Employe * * * in pursuance of * * * authorization received by him from" a "superior officer," to wit, the president of the Bank.

No authority is cited by the Bank warranting a construction of the plain terms of this provision of the bond in any way suggesting that it means anything other than what its terms import, namely, that the Company is not liable where the highest officer in the Bank, its president, authorizes the embezzlement.

Judgment affirmed.